IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEBARRON T. LEVINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 13-0035-WS-M |
| | ) |
| DEUTSCHE BANK TRUST COMPANY | ) |
| AMERICAS, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This newly-filed civil action comes before the Court on the "Motion for Emergency Hearing" (doc. 3) filed by plaintiff, Lebarron T. Levins, who is proceeding *pro se*.[1]

**I.    Relevant Background.**

On the afternoon of January 24, 2013, Levins filed a 21-page, 11-count (and apparently attorney-drafted) Complaint (doc. 1) against named defendants Deutsche Bank Trust Company

---

[1] Plaintiff pleads for liberal construction of his filings and "disavows any … 'understanding' of 'legalese' terms" contained in his filings. (Doc. 3, at 7.) This admission that Levins denies comprehension of the papers he signed and filed in this Court is troubling. Indeed, it appears to place him at odds with the strictures of Rule 11, Fed.R.Civ.P., which provides that his signature on court filings constitutes certification that his claims and legal contentions are warranted by existing law or a nonfrivolous argument for extending or modifying same. *See* Rule 11(b)(2), Fed.R.Civ.P. More generally, plaintiff's *pro se* status does not excuse him from complying with the Federal Rules of Civil Procedure in connection with his request for issuance of a temporary restraining order. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("although we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules") (citation and internal quotation marks omitted). And plaintiff's *pro se* status does not shift the burden to this Court to serve as Levins' *de facto* counsel or to make or develop legal arguments that he failed to make or develop for himself. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party"); *Polk v. Sears, Roebuck, and Co.*, 2012 WL 1640708, *3 (S.D. Ala. May 8, 2012) (recognizing court's "inability to formulate … legal arguments" for unrepresented plaintiff under applicable law).

Americas as Trustee for RALI 2004-QS-2; Mortgage Electronic Registration Systems of America, Inc.; and GMAC Mortgage, LLC.  The Complaint purports to bring a variety of damages claims against all defendants sounding in theories of  fraud, violation of the National Housing Act, "HUD violations," "unfair and unacceptable loan servicing," "wrongful conduct," violation of the Truth in Lending Act, wrongful foreclosure, and "unfair debt collection."  In addition to these many damages claims, the Complaint purports to state a claim for "Emergency Temporary and Permanent Injunctive Relief."  In support of this claim, Levins alleges that "unless an emergency temporary injunction against the foreclosure sale set for January 28, 2013 is not [*sic*] granted, Plaintiff will suffer the irreparable injury, loss, and damage of the loss of his Property."  (Doc. 1, ¶ 30.)  Plaintiff contends that the foreclosure must be halted because "Defendants have no legal standing to initiate and/or maintain a foreclosure of the property." (*Id.*, ¶ 31.)

Accompanying Levins' Complaint is a "Motion for Emergency Hearing," wherein plaintiff reiterates and elaborates on his request for emergency injunctive relief.  According to the Motion, Levins' position is that defendant Deutsche Bank lacks standing to foreclose on his mortgage.  Attached to Levins' Complaint as Exhibit C is an "Assignment of Mortgage" dated September 20, 2012, specifying that defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Homecomings Financial Network, Inc. (the original lender), "hereby grants, assigns and transfers to Deutsche Bank … all beneficial interest under" the mortgage executed by Levins on February 2, 2004.  In his Motion, Levins alleges that "MERS for a number of reasons … is legally barred from making the assignment;" that he believes the assignment to have been "robo-signed" because it was notarized by someone in Ramsey County, Minnesota; and that the assignment "appears to transfer the Mortgage to the RALI 2004-QS2 Trust after the trust was closed."  (Doc. 3, at ¶ 13.)  Levins also cites his "belief and contention that none of the Defendants are in possession of his 'wet-inked' signed Note and Mortgage, have never been legally assigned the rights there under and, therefore, do not have the authority to foreclose on the subject Property."  (*Id.*, ¶ 14.)  On that basis, plaintiff requests an "Emergency Temporary Restraining Order and/or Preliminary Injunction to prevent the foreclosure of Plaintiff's property, currently scheduled for January 28, 2013."  (*Id.* at 7.)

The documents filed by Levins reflect that the only notice he has furnished to defendants that he has applied in this District Court for a temporary restraining order to enjoin them from

carrying out the scheduled foreclosure sale is that on January 24, 2013, he mailed copies of the Motion via U.S. First Class Certified Mail to defendant Deutsche Bank's chief financial officer in New York and to its attorney in Birmingham, Alabama; and to defendants MERS and GMAC Mortgage via letters addressed to their registered agents in Montgomery, Alabama.

## II.     Analysis.

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *See Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted); *see also Forsyth County v. U.S. Army Corps of Engineers*, 633 F.3d 1032, 1039 (11th Cir. 2011) (similar).

Levins' Motion for Emergency Hearing is insufficient to carry this heavy burden for at least three distinct reasons.  First, plaintiff's notice to defendants (and principally Deutsche Bank) is woefully inadequate and unreasonable.  Again, Levins is asking for this Court to enjoin and restrain Deutsche Bank from foreclosing on his property on Monday, January 28, 2013.  The only notice he has given Deutsche Bank of this legal maneuver comes in the form of service copies that he transmitted via U.S. Mail to offices in New York and Birmingham, Alabama on Thursday, January 24, 2013.  Levins does not allege that he undertook any effort whatsoever to notify Deutsche Bank that he had moved for TRO against it by telephone, electronic mail, facsimile, or any method more immediate than mail, which bears a multiple-day lag.  By the time Deutsche Bank and the other defendants receive the service copies plaintiff mailed to them, it will be too late for them to be heard on Levins' request that the January 28 foreclosure be halted.[2]  Thus, for all practical purposes, Levins is seeking issuance of a TRO without affording

---

[2]     Given the practical realities of mail service and the intervening weekend, it would appear highly unlikely that Deutsche Bank would receive either of these mailings prior to January 28; thus, Levins would have this Court grant his Motion and enjoin the foreclosure sale (which rulings must happen prior to January 28 to be meaningful and effective) before Deutsche (Continued)

defendants prior notice or a reasonable opportunity to be heard.  Plaintiff has complied with neither of the requirements of Rule 65(b)(1), Fed.R.Civ.P., for issuance of a TRO without notice to defendants.[3]

In effect, then, Levins is seeking issuance of a TRO on an *ex parte* basis.  The circumstances in which *ex parte* TROs may be entered are narrowly circumscribed.  *See, e.g., Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ("courts have recognized very few circumstances justifying the issuance of an *ex parte* TRO"); *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ("The normal circumstance for which the district court would be justified in proceeding *ex parte* is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found. … There is, however, another limited circumstance for which the district court may proceed *ex parte*: where notice to the defendant would render fruitless further prosecution of the action.").  After all, Levins does not argue that he cannot find Deutsche Bank, nor could he reasonably so argue, given that he has apparently been actively communicating with it concerning the imminent foreclosure proceedings.  And there is no suggestion that notice to defendants would render further action fruitless because, for instance, they would destroy evidence.  This is simply not a case where issuance of an *ex parte* TRO is appropriate.[4]

---

Bank ever receives the mailings through which he notified them of the pendency of his request.  This is tantamount to no notice at all for Rule 65 purposes.

     [3]     That section provides that a TRO may be issued without oral or written notice to adverse parties only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Rule 65(b)(1), Fed.R.Civ.P.  The verified Complaint makes no showing that Levins will sustain immediate and irreparable injury "before the adverse party can be heard in opposition" to his request for TRO.  And plaintiff offers no explanation whatsoever why he opted for such facially deficient notice to Deutsche Bank or why reasonable attempts to provide advance notice to Deutsche Bank were not made and should not be required.

     [4]     Another, related point bears mention here.  By waiting until the last possible moment before filing his Complaint and Motion for TRO, Levins himself guaranteed that a simple mailing of service copies of his filings would not afford defendants timely notice of the emergency relief he seeks, much less a reasonable opportunity to be heard in opposition.  (Continued)

Second, plaintiff's Motion for Emergency Hearing fails for the independent reason that Levins has failed to meet his burden of showing a likelihood of success on the merits. Plaintiff's theory for emergency injunctive relief is that Deutsche Bank lacks standing to foreclose on his property; however, he has not satisfied his burden of persuasion to establish that success on the merits is "likely or probable." *United States v. Alabama*, 2011 WL 4863957, *5 (11th Cir. Oct. 14, 2011) ("A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success.") (citation omitted). Levins argues that MERS "is legally barred from making any Assignments" because MERS has not "ever held a beneficial interest in the Mortgage." (Doc. 1, ¶ 11.) But this contention is belied by the Mortage attached to the Complaint as Exhibit A, in which Levins agreed that he "irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property." (Doc. 1, Exh. A, at 6.) Because plaintiff's own documents demonstrate that he mortgaged the property to MERS at closing, he has not shown a substantial likelihood of success as to his contention that MERS lacked any interest in the mortgage and was therefore precluded from assigning same. As for plaintiff's theory that the Assignment must have been "robo-signed" because MERS' mailing address is in Flint, Michigan but the Assignment was notarized in Minnesota (doc. 1, ¶¶ 58, 59), Levins offers only his own naked conjecture (untethered to any facts whatsoever) that the MERS agent who executed the Assignmant on MERS' behalf and the notary public who notarized that

---

Although plaintiff states in cursory fashion that he "regrets the emergency nature of this petition" (doc. 3, at 7), he offers no meaningful explanation for the dilatory timing of his filings. Surely, the January 28 foreclosure setting was neither a recent development nor a sudden surprise to him. If plaintiff's decision to wait until two (2) business days before the foreclosure sale to initiate judicial proceedings to stop that sale constitutes an "emergency," then it is an emergency of plaintiff's own creation. The Court will not bend or ignore the language of Rule 65(b) to accommodate plaintiff's self-imposed, last-second timetable, particularly when doing so would come at the expense of defendants' rights to be heard and to litigate in favor of their right to move forward with foreclosure proceedings. *See generally Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute"). If the rule were otherwise, then plaintiffs such as Levins would have an incentive to delay filing their TRO applications until the eleventh hour, so as to maximize their strategic advantage and effectively exclude defendants from the TRO briefing, hearing, deliberation and adjudication processes.

signature were not present in the same place at the same time when they executed that document. Unvarnished speculation is not sufficient to satisfy Levins' heavy burden on an application for TRO.  Similarly, Levins' suggestion that the Assignment is invalid because it "appears" to have transferred the mortgage to a trust that had been "closed" to the transfer of new mortgage loans is devoid of persuasive power on a Motion for TRO because (i) he has provided neither facts nor law to support it, and (ii) he fails to make any showing of when the note was transferred to the trust in question, and the note (not the mortgage) is the debt obligation.  *See Knowles v. HBSC Bank USA*, 2012 WL 2153436, *2 n.4 (N.D. Ala. June 8, 2012) ("Clearly, the Note is the obligation to pay borrowed money, [while] the mortgage merely creates a lien against the property as security for that obligation."); *Connell v. CitiMortgage, Inc.*, 2012 WL 5511087, *11 n.20 (S.D. Ala. Nov. 13, 2012) ("The 'mortgage loan' is the debt obligation itself.  It is not the security interest accompanying the debt obligation.  It is not the right to foreclose.").[5]

Plaintiff's Motion and Complaint make much of his "belief and contention that none of the Defendants are in possession of his 'wet-inked' signed Note and Mortgage."  (Doc. 3, ¶ 14.) But he identifies no facts other than his own "belief" that this is so.  More importantly, he ignores the fact that courts applying Alabama law have been unreceptive to this kind of "show me the note" theory of relief.  *See, e.g., Douglas v. Troy Bank & Trust Co.*, --- So.3d ----, 2012 WL 3631148, *3 (Ala.Civ.App. Aug. 24, 2012) (identifying case law rejecting notion that Alabama law requires a mortgagee to produce an original note to initiate foreclosure, deeming "suspect" the plaintiffs' "'show me the note' attack upon the trial court's subject-matter jurisdiction," and professing awareness of "no authority in which a nonjudicial foreclosure has

---

[5] As for plaintiff's theory that MERS could not assign the interests that Levin granted it in the Mortgage unless MERS was also the holder or beneficiary of the Note and security deed, he identifies no authority in support of such a proposition.  The Court is aware of contrary Alabama precedents.  *See, e.g., Coleman v. BAC Servicing*, --- So.3d ----, 2012 WL 2362617, *8 (Ala.Civ.App. June 22, 2012) (explaining that "Alabama law specifically contemplates that there can be a separation" between a note and a mortgage, and that MERS' assignment of mortgage to entity that had previously held – and continued to hold – the note entitled holder to exercise right to foreclose under the mortgage); *Mac v. Brooks*, 2011 WL 3794683, *4 (M.D. Ala. Aug. 25, 2011) (construing Alabama law as providing that, where MERS holds the right to a mortgage as nominee and subsequently assigns the mortgage to an assignee, "MERS' assignment gave the assignee the right to foreclose on the borrower," even though MERS never held the note).

been held invalid for failure to produce or present original documentation evidencing the underlying debt and security for repayment thereof"); *Diessner v. Mortgage Elec. Registration Sys.*, 618 F. Supp.2d 1184, 1187 (D. Ariz. 2009) ("district courts have routinely held that Plaintiff's 'show me the note' argument lacks merit") (citation and internal quotation marks omitted). Absent any authority – which Levins has not provided – suggesting that Deutsche Bank is barred under Alabama law from foreclosing on his property unless it first presents the "wet-inked" original loan and mortgage documents, plaintiff has not satisfied his heavy burden of showing a substantial likelihood of success on this ground, either.

Third, even if Levins had established a substantial likelihood of success on the merits, he has not made an adequate showing that he would be irreparably harmed if the foreclosure sale proceeded as scheduled on January 28, 2013. After all, it would appear that plaintiff will have access to the redemption remedy specified in Alabama Code §§ 6-5-247 et seq., for one year following the foreclosure sale. Under similar circumstances, numerous courts have found no irreparable harm. *See, e.g., Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 2010 WL 4275305, *6 (6th Cir. Oct. 28, 2010) (where state law provides statutory right of redemption for six months after sale, plaintiff's right of redemption implies that "any harm it might suffer from foreclosure was not irreparable"); *Scanlon v. Northwest Mortg., Inc.*, 2012 WL 28140, *2 (D. Minn. Jan. 5, 2012) (finding no irreparable harm where state law provided that defaulting mortgagor "can redeem foreclosed upon property within six months of a foreclosure sale," such that no irreparable injury by loss of title to property "would occur until the end of the six-month redemption period"); *Moulds v. Bank of New York Mellon*, 2011 WL 4344439, *6 (E.D. Tenn. Sept. 14, 2011) (no irreparable harm for plaintiffs' eviction from foreclosed property where Tennessee law provides a statutory right of redemption for two years following a foreclosure sale); *Crow Creek Sioux Tribal Farms, Inc. v. U.S. I.R.S.*, 684 F. Supp.2d 1152, 1156 (D.S.D. 2010) ("Plaintiffs' arguments do not satisfy the irreparable harm element to justify the requested injunction, especially in light of the redemption rights."); *Sayo Inc. v. Zions First Nat'l Bank*, 2006 WL 3392072, *5 (E.D. Mich. Nov. 22, 2006) ("Plaintiff has not shown irreparable harm will occur at the time of the foreclosure sale since Plaintiff is allowed a redemption period after the foreclosure sale."); *Alpine Fellowship Church of Love and Enlightenment v. United States*, 1987 WL 49378, *2 (N.D. Cal. Jan. 26, 1987) ("Nor does plaintiff face irreparable harm since he may exercise his right of redemption … after the sale of

the property."). Because Levins would have a right of redemption after the foreclosure sale, he has not met his burden of establishing that the loss of his property via foreclosure on January 28, 2013 would constitute irreparable harm.[6]

### III. Conclusion.

For all of the foregoing reasons, the Motion for Emergency Hearing (doc. 3) filed on the afternoon of Thursday, January 24, 2013 to enjoin a foreclosure sale set for Monday, January 28, 2013 is **denied**.[7]

DONE and ORDERED this 25th day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] To be sure, the Court well understands that the statutory redemption mechanism is not a cost-free endeavor, and that plaintiff may well endure economic hardship if the foreclosure sale happens as scheduled. Given the continuing availability of monetary remedies, however, this is not the kind of harm that qualifies as irreparable for Rule 65 purposes. *See, e.g., Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) ("An injury is irreparable if it cannot be undone through monetary remedies.") (citation omitted); *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("economic losses alone do not justify a preliminary injunction").

[7] The Court notes that plaintiff has not paid the applicable filing fee in this case, but that he has instead filed a Motion to Proceed without Prepayment of Fees (doc. 2), which has been referred to the Magistrate Judge for ruling. Ordinarily, federal courts take no action on civil complaints until either (i) the prescribed filing fee is paid or (ii) *in forma pauperis* ("IFP") status is granted. In light of the time-sensitive nature of plaintiff's request for TRO, and the imminent irreparable harm he contended he was facing, the Court in its discretion has ruled on the motion without either of these two prerequisites having occurred. *See, e.g., Calabrese v. Northwest Trustee Services, Inc.*, 2010 WL 3339531, *1 n.1 (W.D. Wash. Aug. 23, 2010) (even though plaintiff had not paid filing fee and his IFP motion had been denied, "in light of the imminent trustee's sale, the court addresses Mr. Calabrese's motion for a temporary restraining order"). However, this action will not proceed further until either the fee has been paid in full or Levin has been granted leave to proceed without prepayment of fees.